# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **KAREN M.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **1:23CV1116** |
| | ) | |
| **MARTIN O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Karen M. brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for social security disability insurance benefits and a period of disability. The Court has before it the certified administrative record and each party has also filed a dispositive brief.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and a period of disability alleging a disability onset date November 12, 2017.[1] (Tr. 265-66.) The application was denied initially and upon reconsideration. (Tr. 165-68, 172-79.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which she attended on July 20, 2022, along with her attorney and a vocational expert. (Tr. 180-81, 46-107.) In her May 19, 2023 decision, the ALJ determined that Plaintiff was not disabled under the Act from her November 12, 2017 alleged onset date through her December 31, 2022 date last insured. (Tr. 23-39.) On October

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 5.)

26, 2023, the Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Tr. 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the relevant sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 12, 2017 through her date last insured of December 31, 2022. (Tr. 25.) She next found the following severe impairments at step two: "status post right microdiscectomy; obesity; pes planus, plantar fasciitis; hammertoes, hallux valgus, degenerative joint disease of the feet; and

degenerative disc disease of the lumbar spine." (Tr. 25.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 30.) She next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she had the capacity to perform sedentary work, "except the claimant can occasionally climb, kneel, crawl, crouch, stoop, balance, with standing and walking on even terrain. The claimant can occasionally use foot pedals. The claimant can sit for 1 hour and stand for 5 minutes, followed by a return to sitting. Noise levels should be moderate." (Tr. 31.) At the fourth step, the ALJ determined that Plaintiff could perform her past relevant work as a customer service representative and a customer complaint clerk. (Tr. 38.) Having decided that Plaintiff could perform her past relevant work, the ALJ did not reach the fifth step in the analysis. (Tr. 38.) Consequently, the ALJ concluded that Plaintiff was not disabled. (Tr. 39.)

## IV. ISSUE AND ANALYSIS

Plaintiff raises two objections. In the first, she contends that "[t]he ALJ erred by finding that Plaintiff's PTSD was not a severe impairment." (Docket Entry 8 at 3.) In the second, Plaintiff contends that "[t]he ALJ erred in failing to account for even the conceded limitations due to Plaintiff's PTSD in the RFC." (*Id.* at 15.) As explained below, these objections are without merit.

### A. The ALJ's step two assessment of PTSD and depression is well-supported.

In her first objection, Plaintiff challenges the ALJ's assessment of her PTSD at step two. (*Id.* at 3) ("The ALJ erred by finding that Plaintiff's PTSD was not a severe

3

impairment."). However, throughout the course of her brief, it is clear that she also challenges the manner in which the ALJ addressed her depression as well. (*Id.* at 4-14.) For the following reasons, these objections are unpersuasive.

At step two of the sequential evaluation process, the claimant bears the burden of demonstrating a severe, medically determinable impairment that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509; *Shrecengost v. Colvin*, No. 14CV506, 2015 WL 5126117, at *3 (W.D.N.Y. Sept. 1, 2015). The Act describes "a physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. A statement of symptoms, diagnosis, or medical opinion is not sufficient to establish the existence of an impairment. *Id.* A "[l]icensed physician" or "[l]icensed psychologist" is an "acceptable medical source." 20 C.F.R. § 404.1502(a).

An impairment is "severe" unless it "has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984); *see also* 20 C.F.R. § 404.1522(a); *Brookover v. Saul*, No. 2:20-CV-24-M, 2021 WL 4147075, at *4 (E.D.N.C. June 25, 2021). As such, the "severity standard is a slight one." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007). When assessing the severity of mental impairments,

4

the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into the written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

An error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps. *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009); *see also Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Garner v. Astrue*, 436 Fed. App'x 224, 225, n* (4th Cir. 2011). However, provided that the claimant has at least one severe impairment, the ALJ must consider the combined effect of all of the claimant's impairments, irrespective of whether they are severe, in determining the claimant's RFC. 20 C.F.R. § 404.1545(e); *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989). Finally, non-severe impairments do not require limitations in the RFC if there is substantial evidence and an adequate explanation for the omission. *See, e.g., Paris F. v. Comm'r of Soc. Sec.*, No. 20-CV-6724S, 2022 WL 2092904, at *4 (W.D.N.Y. June 10, 2022); *Smith v. Colvin*, No. CIV-13-617-F, 2014 WL 4384705, at *2 (W.D. Okla. Sept. 3, 2014); *Krosse v. Colvin*, No. 13-CV-270-PJC, 2014 WL 1342970, at *7 (N.D. Okla. Apr. 3, 2014) ("Contrary to Krosse's argument, the ALJ was not required to find that his nonsevere depression resulted in limitations in his ability to do work-like

5

functions."); *Cooks v. Astrue*, No. 1:10-CV-02714-TWT, 2012 WL 567189, *n.12 (N.D. Ga. Jan. 24, 2012) (collecting cases).

Here, the ALJ's assessment of Plaintiff's PTSD and depression was remarkably thorough. More specifically, the ALJ assessed Plaintiff's PTSD and depression as follows:

> The claimant's medically determinable mental impairments of post-traumatic stress disorder and depression, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe. While in the service, the claimant reported a miscarriage due to abuse in 2018, resulting in PTSD (Ex. 23F/2). She also endorsed ongoing panic attacks, anxiety, sleep disturbances and mood changes. (Ex. 26F/7). However, there is very little treatment on file relating to her mental issues. She testified her symptoms could occur once a month or maybe every two to three months, but in general, she preferred to stay home. The claimant does not take any medication and other than a few sessions she had with a psychologist over a 4 year period, she has had no treatment. This certainly supports that her symptoms flare up infrequently and would not impact her ability to work.
>
> The claimant had about five sessions for PTSD with Kamala Uzzell, Ph.D. over a four-year period between 2018 and 2022. On October 13, 2018, the claimant told Dr. Uzzell that she had severe PTSD due to two incidents while in the Air Force. Although she has not seen the responsible individuals in several years, she feared that they could return to harass her. She reported feeling overcome with sadness, guilt and anxiety, and was further triggered by the MeToo movement, which was in the news at the time. She reported feeling emotionally damaged and prone to flashbacks. Dr. Uzzell administered the Trauma Screening Questionnaire (TSQ), to which the claimant answered "yes" to seven out of its 10 questions. Based on these results, as well as examination, Dr. Uzzell opined that the claimant had PTSD, and that there was a 50 percent or greater probability that this occurred during her time in the Air Force (Ex. 13F/3).
>
> On February 11, 2019, the claimant returned to Dr. Uzzell. She

6

reported that the recent news regarding singer R. Kelly further triggered her. She denied suicidal ideation, although she experienced it in the past. She endorsed problems sleeping, and felt anxious and emotional all the time (Ex. 13F/4). On December 3, 2020, the claimant identified her coping strategies as playing solitaire and watching television. She continued to have flashbacks and was unable to trust others (Ex. 17F/2). On September 23, 2021, the claimant was highly emotional, crying throughout the session. She remained tired and frustrated and continued to have flashbacks (Ex. 17F/1). As noted herein, it was documented in the VA records that her father was in hospice and had passed away by October of 2021 (Exhibit 20F). Most recently, on July 19, 2022, the claimant returned [to] Dr. Uzzell, noting that the pandemic was causing severe anxiety. She said the state of the world made her anxious and sad, and that she had problems focusing and concentrating on tasks (Ex. 21F).

Based on this treatment, Dr. Uzzell opined on two occasions that the claimant was "permanently unemployable" due to PTSD (Ex. 18F and 21F). However, the undersigned does not find this to be persuasive. Dr. Uzzell administered PTSD testing at their first session, but all subsequent encounters have been based on the claimant's subjective statements. It is unclear how Dr. Uzzell could determine that someone is permanently unemployable after seeing them approximately once a year, and then, after having only have one visit. The claimant did not report any of these symptoms to the VA or her other physicians, and only reported them to a provider determining VA disability for PTSD, which she did eventually get. Moreover, while some examination reports do suggest PTSD and other mental issues, the question as to whether the claimant is employable is reserved to the Commissioner, and neither valuable nor persuasive to a Social Security decision (20 CFR 404.1520b(c), 404.1520(c)).

Moreover, this opinion is inconsistent with other evidence on file. There is very little treatment for mental issues other than with Dr. Uzzell. Her VA records indicate that she tested negative for depression on several occasions, including July 31, 2019; September 14, 2020; March 8, 2022 (Ex. 20F 17, 138 and 260). She did test positive for depression on two other

7

occasions, including September 8, 2021, October 8, 2021, although the death of her father was noted to be an issue in October of 2021 (Ex. 20F/67, 74-75, 81). In a VA questionnaire dated April 13, 2019, Cynthia Lewis, Ph.D. opined that the claimant did have PTSD. She did not list any functional restrictions but denied any life-threatening conditions necessitating immediate treatment (Ex. 23F).

On February 24, 2021, the claimant saw examiner David L. Mount, Psy.D. in order to determine eligibility for benefits. At this visit, she reported ongoing panic attacks, anxiety, sleep disturbance, and mood changes. She said she did not handle stress well. She reported attention and concentration issues that affected her memory. She reported being "anxious and emotional" all the time. She reported back pain that on medications was a pain level 2 to 3 and that she did pretty good on medications. The claimant's mental status examination was relatively unremarkable. She was alert, fully oriented, and presented with a cooperative demeanor. She demonstrated appropriate eye contact and sufficient responsiveness to the examination process. Mood and affect were appropriate to context. Receptive and expressive language were intact. Speech was of normal rate, tone, and volume. She answered questions and followed directions with little assistance and demonstrated intact hand-eye coordination. She was able to complete multistep questionnaires with little assistance. Her memory was fair for recent and remote events. Information processing speed was normal. Thought process and content were intact. There were no delusions, hallucinations, phobias, obsessions/compulsions, or homicidal ideation present. She demonstrated good judgment about and insight into the situation necessitating this evaluation. Dr. Mount did diagnose the claimant with PTSD symptoms and checked a box which stated "causing clinically significant distress or impairment in social, occupational, or other important areas of functioning." (Exhibit 26F). However, this was mostly based on her subjective statements, both as reported in this examination and in Dr. Mount's review of the earlier evidence. In VA records from March of 2021, just weeks after telling this examiner of debilitating PTSD symptoms, the claimant specifically denied anxiety, despite her husband undergoing treatment for cancer and her father entering hospice (Exhibit 20F/109). The

8

claimant did obtain a 50 percent service-connected rating for PTSD (Ex. 26F). However, this is based on an entirely different set of criteria than those used by Social Security. Thus, this fact is neither valuable nor persuasive (20 CFR 404.1520b(c), 404.1520(c), 416.920b(c), and 416.920(c)).

The undersigned does not find the opinion of Dr. Mount persuasive. He only examined the claimant one time and the purpose of the examination was for completion of a form to obtain Veterans Benefits. Dr. Mount appeared to base his opinion on her subjective complaints, since his examination was unremarkable. Further, the claimant's statements to Dr. Mount were inconsistent with her statements to her other providers, where she specifically denied persistent PTSD symptoms.

The undersigned has considered the Psychiatric Review Technique evaluation provided on August 13, 2019, by state agency psychological consultant Barry Morris, Ph.D. Based on the available evidence, Dr. Morris opined that the claimant's PTSD resulted in mild limitations in interacting with others and in concentrating, persisting and maintaining pace, and no limitations in the other two domains (Ex. 4A/8-9). The undersigned finds this partially persuasive. It is supported by a review of the record, but later records are consistent with slightly more restrictive limitations in understanding, remembering and applying information, and in adapting and managing herself. This is evident from Dr. Uzzell's records as well as the VA records (Ex. 18F, 21F, 23F and 26F).

Therefore, in making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is understanding, remembering, or applying information. In this area, the claimant had a mild limitation. She was oriented to person, place, and time (Ex. 6F/7, 13, 19F/6, 20F/135, 26F/7). Her recent and remote memory was intact (Ex. 6F/7, 23), appropriate (Ex. 6F/13), and fair (Ex. 26F/7). Her language was fluent (Ex. 6F/7),

9

appropriate (Ex. 6F/13), and intact (Ex. 26F/7). She exhibited a normal fund of knowledge (Ex. 6F/7, 13). She followed all commands (Ex. 6F/23). Thus, the claimant has no more than a mild limitation in this area.

The next functional area is interacting with others. In this area, the claimant had a mild limitation. Her speech was normal (Ex. 6F/7, 20F/135), fluent and spontaneous with normal comprehension (Ex. 6F/7); clear with normal prosody and enunciation (Ex. 6F/13); and of normal rate, tone, and volume (Ex. 26F/7). Her mood and affect were described as normal (Ex. 6F/13, 19F/6) and appropriate (Ex. 20F/126, 135, 26F/7). She was cooperative (Ex. 26F/7). She demonstrated appropriate eye contact (Ex. 26F/7). She demonstrated sufficient responsiveness to the examination process (Ex. 26F/7). Accordingly, the claimant has no more than a mild limitation in this area.

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant had a mild limitation. Her attention and concentration were normal (Ex. 6F/7) and appropriate (Ex. 6F/23). Her thought process was linear (Ex. 6F/13) and intact (Ex. 26F/7). She answered questions and followed directions with little assistance (Ex. 26F/7). She completed multistep questionnaires with little assistance (Ex. 26F/7). Thus, the claimant has no more than a mild limitation in this area.

The fourth functional area is adapting or managing oneself. In this area, the claimant had a mild limitation. In 2020, the claimant scored 1 on the PHQ-2 screen for depression, indicative of a negative depression screen (Ex. 20F/138). In 2019, the claimant scored a 2 on the PHQ-2 depression screen, indicative of no depression over the previous 2 weeks (Ex. 20F/261). There were no delusions, hallucinations, phobias, obsessions/compulsions, or homicidal ideation present (Ex. 26F/7). Her judgment and insight were good (Ex. 26F/7). Accordingly, the claimant has no more than a mild limitation in this area.

Because the claimant's medically determinable mental impairments caused no more than "mild" limitation in any of

10

the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they were non-severe (20 CFR 404.1520a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 27-30.)

Here, the ALJ gave many good reasons supported by substantial evidence for concluding that Plaintiff's PTSD and depression were not severe. First, the ALJ relied on evidence showing that Plaintiff received almost no mental health treatment, specifically explaining that "there is very little treatment on file relating to [Plaintiff's] mental issues." (Tr. 27.) Indeed, Plaintiff attended just five individual therapy sessions (approximately one visit per year) with Kamala Uzzell, Ph.D., during the entire four-year period. (Tr. 27-28, citing Exs. 13F, 17F, 18F, 21F; Tr. 684-85 (10/18/18), 686 (2/11/19), 710 (9/23/21), 711 (12/3/20), 1048 (7/19/22), 1049 (listing dates of counseling sessions).) Second, the ALJ also accurately pointed out that Plaintiff did not testify to frequent mental health symptoms.[2]

_____

[2] Specifically, Plaintiff had the following exchange with the ALJ at the hearing:

Q [H]ow often do you feel you have symptoms?

A The symptoms, as far as the triggers, just happens to be something that happens randomly. There's nothing I

11

Third, the ALJ accurately pointed out that Plaintiff did not present PTSD complaints to her treating medical providers, including her primary care providers at the Department of Veterans Affairs.[3] (Tr. 28; *see generally* Tr. 762-1047.) Fourth, Plaintiff denied mental health

> can pinpoint, you know? You know, that happens when -- this month and then two months later it's going to happen again. . . .
>
> Q And you're saying the symptoms can happen one month, and then two -- you have two months where you don't have symptoms?
>
> A Right, right. I mean, I may have the dreams, and I may have the remembrance of something that triggers. My -- most of my symptoms is that I want to be -- I want to stay home. . . .

(Tr. 79.) The ALJ summarized this by stating "[s]he testified her symptoms could occur once a month or maybe every two to three months, but in general, she preferred to stay home." (Tr. 27.) Plaintiff describes this as a "mischaracterization of the testimony" because it omits any reference to Plaintiff's PTSD dreams or flashbacks or "most significant[ly] . . . that she wants to stay inside her house." (Docket Entry 8 at 6.) However, the ALJ repeatedly referenced Plaintiff's allegations of flashbacks (Tr. 27) and alleged issues with sleeping (Tr. 27-28). And, as described below in this Recommendation, the ALJ also pointed to a robust series of daily activities inconsistent with a need to remain in a highly structured environment (*i.e.*, her home) and which supported the conclusion that Plaintiff's mental health impairments were non-severe. Plaintiff contends too that the ALJ "ignore[ed the fact that] that while frequency of treatment is a factor when evaluating symptom severity, it is not required to find an impairment severe[.]" (Docket Entry 8 at 7.) Plaintiff points to nothing in the ALJ's decision persuasively supporting the conclusion that the ALJ failed to understand this. Plaintiff has failed to point to any error here, much less a material one.

    [3] Plaintiff faults the ALJ for noting that she generally did not report her mental health symptoms to medical providers other than to Dr. Uzzell, her treating psychologist, because the underlying source of her trauma was related to sexual trauma. (Docket Entry 11 at 3-4.) However, context is important here. The ALJ's finding was part of a larger point that was well supported as explained throughout this Recommendation: that the evidence in the record supported the conclusion that "her symptoms flare up infrequently and would not impact her ability to work." (Tr. 27.) The Court does not see an error here, much less a

symptoms during several appointments. (Tr. 28, citing Ex. 20F; *see, e.g.,* Tr. 896, 899, 989, 1021-22.) Fifth, the ALJ further discussed that Plaintiff was not prescribed psychotropic medications.[4] (Tr. 27, 77.)

Sixth, Plaintiff's examiners routinely documented unremarkable mental status findings, such as appropriate mood and affect; intact memory, attention, and concentration; and normal speech, thought process, judgment, insight, and fund of knowledge, as the ALJ noted. (Tr. 29-30, *see, e.g.,* Tr. 474, 479, 484, 488, 527, 533, 538, 543, 553, 576, 582, 641, 700, 718, 727, 871, 887, 896, 945, 973.) Given Plaintiff's unremarkable treatment history, the ALJ reasonably found that Plaintiff's "symptoms flare up infrequently and would not impact her ability to work." (Tr. 27.) Seventh, the ALJ further took into consideration the opinion of the state agency psychological expert (Barry Morris, Ph.D.), who found that Plaintiff's non-severe mental impairments did not result in functional restrictions. (Tr. 29, 158-59.)

Eighth, the ALJ accurately pointed out that Plaintiff performed a significant range of daily activities. For example, the ALJ noted that Plaintiff reported being independent in daily living activities in May of 2021. (Tr. 26, 847-48.) The ALJ also pointed to evidence that Plaintiff cooked, did light cleaning (sweeping and washing dishes), drove, and participated in

---

prejudicial one.

[4] Plaintiff asserts that "[t]he ALJ faulting [her] for not taking medications for PTSD and depression (see AR 27) when she is being treated by a psychologist, not an MD (and thus cannot be prescribed medications by her provider) is . . . problematic because, again, she primarily manages her symptoms by remaining in the structured setting of isolation in her house[.]" (Docket Entry 8 at 9.) As explained, Plaintiff's activities of daily living do not support the conclusion that her alleged need to stay at home limited her functionality or her ability to attend medical appointments and (if necessary) seek treatment or medication.

13

aerobics and weight exercises. (Tr. 32-33, 55, 66, 74, 83-85, 632-33, 636-38, 648, 650.) Additionally, Plaintiff's medical records showed that she traveled out of town for a conference (Tr. 635), took a vacation to the Outer Banks (Tr. 1013, 1005), and attended group fitness classes at the VA (Tr. 632-73, 33, 74). For all these reasons, the ALJ's step two assessment of Plaintiff's PTSD and depression is legally correct, well-supported, and susceptible to judicial review.

**B. The omission of mental limitations from the RFC was well supported.**

Plaintiff next contends that "[t]he ALJ erred in failing to account for even the conceded limitations due to Plaintiff's PTSD in the RFC." (Docket Entry 8 at 15.) Again, however, throughout the course of her brief, it is clear that she also challenges the ALJ's decision to omit mental health limitations from the RFC related to her depression as well. (*Id.* at 15-18.) For the following reasons, these objections are unpersuasive.

Here, the ALJ adequately explained why Plaintiff's non-severe mental impairments of depression and PTSD, and no more than mild limitations in all four paragraph B criteria, did not warrant any mental limitations in the RFC. Specifically, the ALJ found that Plaintiff's depression and PTSD caused mild limitations in the paragraph B criteria at step two (Tr. 29-30), and from this the ALJ also reasonably determined that no mental work-related limitations warranted inclusion in the RFC. (Tr. 27 "[H]er symptoms flare up infrequently and would not impact her ability to work.") The ALJ identified substantial evidentiary support for her fact-finding when she discussed the relevant mental health evidence at step two.

14

In fact, the Court has already described that evidence at considerable length above. As noted in the prior sections, the ALJ relied on evidence showing that (1) Plaintiff received no mental health treatment other than attending five individual therapy sessions over the relevant four-year period; (2) she did not present PTSD complaints to her treating medical providers; (3) she denied mental health symptoms during several appointments; (4) Plaintiff was not prescribed psychotropic medications, (5) her examiners routinely documented unremarkable mental status findings; (6) the state agency psychological expert found Plaintiff's non-severe mental impairments did not result in functional restrictions; and (7) Plaintiff performed a range of daily activities, a number of which occurred outside the home.

The ALJ thus gave good reasons for declining to adopt mental (or social) limitations in the RFC. *See, e.g., Paris F.*, 2022 WL 2092904, at *4; *Smith*, 2014 WL 4384705, at *2; *Krosse*, 2014 WL 1342970, at *7; *Cooks*, 2012 WL 567189, *n.12 (collecting cases). The ALJ's narrative discussion of the above-described evidence in the decision demonstrates that she built a logical bridge between the record and her conclusion that mental and social RFC limitations were unnecessary.[5] Plaintiff's objection has no merit.

---

[5] The Court considers the ALJ's decision in its entirety. *See Keene v. Berryhill*, 732 Fed. App'x 174, 177 (4th Cir. 2018) ("We must read the ALJ's decision as a whole."); *Smith v. Astrue*, 457 Fed. App'x 326, 328 (4th Cir. 2011). In other words, the ALJ need only review the evidence once in the decision. *See McCartney v. Apfel*, 28 Fed. App'x 277, 279 (4th Cir. 2002). To the extent Plaintiff contends otherwise (Docket Entry 8 at 16-17), she is mistaken. Additionally, for the many reasons set forth in this Recommendation, the Court is not left to speculate as to why the ALJ concluded that Plaintiff's RFC required no mental or social limitations. The Court can and has meaningfully reviewed the ALJ's decision.

15

**C. Plaintiff's other objections to the contrary are not persuasive.**

Plaintiff's other objections to the contrary are not persuasive. These objections generally amount to no more than an impermissible request for the Court to reweigh the evidence, a task this Court is not authorized to perform. *See Craig*, 76 F.3d at 589.

Plaintiff may also tacitly be challenging the ALJ's subjective complaints assessment. If she is, this objection fails. A two-part test governs the evaluation of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). The second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-596. While the ALJ must consider a claimant's statements and other subjective evidence at step two, she need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, see 20 C.F.R. § 404.1529(c)(3), and heard the claimant's testimony and observed her demeanor, the ALJ's determination regarding Plaintiff's subjective complaints is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

The ALJ here completed the two-step *Craig* analysis. First, the ALJ stated that she had carefully considered the evidence and found that Plaintiff's "medically determinable

16

impairments could reasonably be expected to cause some of the alleged symptoms[.]" (Tr. 32.) The ALJ thus discharged her duty under the first step of the *Craig* analysis.

Second, at step two, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 32.) In support of this conclusion, the ALJ set forth many good reasons for partially discounting Plaintiff's subjective complaints (including those related to her mental health), which are the same reasons discussed at length above earlier in Subsection IV.A-B.

### i. The ALJ properly considered the opinion evidence.

To the extent Plaintiff's objections do more than ask the Court to reweigh the evidence, or challenge the ALJ's subjective complaints analysis, they are still unpersuasive. For example, Plaintiff's challenge to the ALJ's assessment of the medical opinions addressing her PTSD and/or depression is unpersuasive. More specifically, the longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed. *See* 20 C.F.R. § 404.1520c(a) (effective March 27, 2017). Now, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* Nevertheless, an ALJ must consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior medical finding in a claimant's case record. *See id.* § 404.1520c(b). When a medical source provides more than one opinion or finding, the ALJ will evaluate the

17

persuasiveness of such opinions or findings as a class. *See id.* § 404.1520c(b)(1). In doing so, the ALJ is "not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

In evaluating persuasiveness, the ALJ must articulate two factors: supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. *Id.* § 404.1520c(c)(1); *see also Revisions to Rules*, 82 Fed. Reg. at 5853. Consistency is an external check that references evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2); *see also Revisions to Rules*, 82 Fed. Reg. at 5853. The ALJ must only address the three other persuasiveness factors—relationship with the claimant, specialization, and the catchall "other factors"—when two or more medical opinions, or prior administrative medical findings about the same issue, are equally persuasive in terms of supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(3), 404.1520c(c)(3)-(5).

Furthermore, "[s]tatements that [claimants] are or are not disabled, . . . able to work, or able to perform regular or continuing work," are statements on an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3). Under the revised regulations, statements on issues reserved to the Commissioner are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(1)-(3). The regulations also make clear that, for such claims, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c).

18

Here, the ALJ recognized that Dr. Uzzell stated that Plaintiff was "permanently unemployable" due to PTSD (Tr. 710, 712, 1048), but found that this opinion was not persuasive (Tr. 28). *See* 20 C.F.R. § 404.1520c (explaining how the agency will consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017). As the ALJ explained, Dr. Uzzell's opinion was based on Plaintiff's subjective reporting during once-yearly visits. (Tr. 28.) But the regulations provide that a claimant's subjective complaints, alone, are not enough to establish disability. 20 C.F.R. § 404.1529(a). As the ALJ appropriately reasoned, "[i]t is unclear how Dr. Uzzell could determine that someone is permanently unemployable after seeing them approximately once a year, and then, after having only one visit." (Tr. 28.) The ALJ rightly discounted Dr. Uzzell's opinion because it was not well supported. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be.").

The ALJ further explained that Dr. Uzzell's opinion was "inconsistent with other evidence on file." (Tr. 28.) *See* 20 C.F.R. § 404.1520c(c)(1) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). As the ALJ discussed, "[t]here is very little treatment for mental issues other than with Dr. Uzzell." (Tr. 28.) In fact, as the ALJ noted (and discussed above), Plaintiff failed to mention PTSD symptoms to her treating medical providers, and she even specifically denied mental health symptoms during

19

several medical appointments. (Tr. 28-29, 896, 899, 989, 1021-22.) In addition, the ALJ rightly discounted Dr. Uzell's opinion that Plaintiff was "permanently unemployable" because "the question as to whether the claimant is employable is reserved to the Commissioner, and neither valuable nor persuasive to a Social Security decision." (Tr. 28, citing 20 CFR §§ 404.1520b(c), 404.1520(c).)[6]

Next, the ALJ explained that the checkbox opinion of one-time examiner David Mount, Psy.D., stating that Plaintiff's PTSD symptoms "cause clinically significant distress or impairment in social, occupational, or other important areas of functioning" was not persuasive. (Tr. 28-29, 1082.) As the ALJ discussed, the sole purpose of Dr. Mount's examination was to assist Plaintiff's application for VA benefits based on PTSD. (Tr. 28-29, 1077-85.)[7] The ALJ further noted that Dr. Mount's opinion was inconsistent with the unremarkable mental status findings he recorded. (Tr. 28-29.) As the ALJ explained, Dr. Mount observed that Plaintiff was alert, fully oriented, and cooperative, with normal eye contact, appropriate mood and affect, normal speech, fair memory, intact thought processes,

---

[6] Notably, the ALJ was not required to provide any analysis of Dr. Uzzell's opinion under the revised regulations. *See* 20 C.F.R. § 404.1520b(c) ("Because the evidence listed in paragraphs (c)(1) through (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, we will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c.").

[7] As the ALJ discussed, Plaintiff was awarded a 50% service-connected rating for PTSD, but this decision was "based on an entirely different set of criteria than those used by Social Security" and was "neither valuable nor persuasive" under the revised regulations. (Tr. 29.) *See* 20 C.F.R. §§ 404.1520b(c)(1); 404.1504.

normal information processing speed, and good judgment. (Tr. 28, 1083.) He also noted that Plaintiff answered questions, followed directions, and completed multistep questionnaires with little assistance. (Tr. 28, 1083.) Given his unremarkable examination, the ALJ reasonably found Dr. Mount's opinion "was mostly based on her subjective statements." (Tr. 29.) But, as the ALJ pointed out, "[Plaintiff's] statements to Dr. Mount were inconsistent with her statements to her other providers, where she specifically denied persistent PTSD symptoms." (Tr. 29.) Thus, the ALJ articulated valid reasons for finding Dr. Mount's opinion was not persuasive.[8] (Tr. 28-29.)

The ALJ also considered the findings of state agency psychological consultant Barry Morris, Ph.D., (Tr. 29, 158-59), who is deemed, by regulation, "highly qualified" and an "expert in Social Security disability evaluation." *See* 20 C.F.R. § 404.1513a(b)(1). Dr. Morris reviewed the record at the reconsideration level of review and found no limitation from mental health related issues in Plaintiff's ability to understand, remember, or apply information and adapt or manage herself; and a mild limitation in Plaintiff's ability to interact with others and concentrate, persist, or maintain pace. (Tr. 158-59.) The ALJ explained that

---

[8] Plaintiff asserts that "the ALJ's dismissal of Dr. Mount's medical opinion based on his only evaluating [Plaintiff] once was improper" because Dr. Mount's opinion is one of "the only psychologically specific evaluations in the record." (Docket Entry 8 at 8.) Plaintiff asserts further that "this rationale fails to properly factor in [Plaintiff's] generally stabilizing her PTSD from military sexual trauma . . . and stalking incidents by isolating from others at her house, leaving only when necessary for treatment and necessities." (*Id.*) As demonstrated above, the ALJ in this case gave a number of good reasons for discounting Dr. Mount's opinion beyond the fact that Dr. Mount only examined Plaintiff once. And, as further explained earlier in this Recommendation, the ALJ pointed to Plaintiff's robust activities of daily living, which supported the conclusion that Plaintiff's alleged need to stay home did not impose significant limitations on her functionality.

21

Dr. Morris's opinion was "partially persuasive" because it was supported by a review of the record, but she ultimately concluded Plaintiff had mild limitations in all four functional areas. (Tr. 29.) Plaintiff has not identified an error in the ALJ's assessment of the medical opinions.

### ii. *Shelley C.* does not require remand here.

Nor does the Fourth Circuit's decision in *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023) require a different outcome here. In *Shelley C.*, the Fourth Circuit held for the first time that depression is a disease that does not produce objective medical evidence. *Shelley C.*, 61 F.4th at 361-62. In light of this, the Fourth Circuit concluded that "[b]ecause the ALJ improperly increased Shelley C.'s burden of proof, in requiring that her subjective statements be validated by objective medical support, we must find error." *Id.* at 362 (internal citations, quotations, and brackets omitted); *see also Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020) ("ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence."). Relying on *Shelley C.*, Plaintiff faults the ALJ for considering her largely normal mental status reports, described in greater detail above. (Docket Entry 8 at 9-10; Docket Entry 11 at 1-3.)

However, the case at issue here is materially distinct from *Shelley C.* for a number of reasons.[9] First, the Fourth Circuit has not extended its holdings in *Arakas* and *Shelley* C. to

---

[9] The case at hand is also factually distinct from *Shelley*, which involved the following facts (1) the plaintiff attempted suicide by "intentionally overdosing on . . . medications" shortly before applying for benefits, *Shelley C.*, 61 F.4th at 347, (2) the plaintiff's "periods of

PTSD. *See Clifford E. v. O'Malley*, No. 1:23CV704, 2024 WL 3105669, at *9 (M.D.N.C. June 24, 2024) (noting that the Fourth Circuit has not extended the *Arakas/Shelley* line of cases beyond fibromyalgia and depression and addressing significant differences between PTSD and depression). To the extent that Plaintiff contends that *Shelley C.* applies to the ALJ's consideration of her PTSD (as opposed to her depression), she is mistaken.

Second, even setting this aside, there is evidence in Plaintiff's mental status reports which is self-reported, in which she denies various symptoms, including symptoms of PTSD and depression. (*See, e.g.*, Tr. 896 (9/14/20, Range of Symptoms: "Psych - no anxiety, depression - husband recently dx w/cancer they are doing better, no suicidal ideations, no homicidal ideations"), 973 (12/30/2019, "PSYCH: denies anxiety, depression and PTSD"), 989 (10/3/19, "Denies feeling depressed, or having any current stressors"), 914 (5/6/20, "Denies feeling depressed, or having any current stressors."), 770 (5/20/22, "denies anxiety"), 939 (3/10/20, "Denies feeling depressed, or having any current stressors.").) *Shelley C.* does not prohibit an ALJ from considering a claimant's statements about their

improvement were short-lived," and she "usually spiraled into deepened periods of heightened anxiety and depression mere days after she vocalized her improvement," *id.* at 348; (3) "[b]ecause [the plaintiff's] symptoms continued to waver despite her therapy and constant medication adjustment, [her treating psychiatrist] urged [the plaintiff] to pursue either Electro Convulsive/Shock Therapy ('ECT') or Transcranial Magnetic Stimulation ('TMS') therapy," *id.* at 349; and (4) the plaintiff underwent "36 TMS treatments" but her "positive results were fleeting, and [she] quickly slipped back into a depressive state, plagued with melancholy, lethargy, and self-deprecating thoughts just weeks after finishing her final TMS session," *id.* at 349-550. In contrast, Plaintiff in the instant matter had little mental health treatment, no psychotropic medication, did not present PTSD complaints to her treating medical providers, denied mental health symptoms during several appointments, and performed a wide array of daily activities.

mental status, even in the context of depression. *See Clifford E.*, 2024 WL 3105669, at \*9 n.11 ("*Shelley C.* does not bar the ALJ from considering those *subjective* components of a mental status examination.").[10]

Third, the ALJ discounted Plaintiff's subjective complaints related to her mental health for a number of reasons (discussed above in Part IV.A.) that still remain relevant post-*Shelley*, including the fact that Plaintiff received almost no mental health treatment, took no psychotropic medication, did not present PTSD complaints to her treating medical providers, denied various mental health symptoms during several appointments, and performed a wide array of daily activities.[11] *See* 20 C.F.R. § 404.1529(c)(3).

---

[10] The ALJ also pointed out that Plaintiff screened negative for depression a number of times according to a health questionnaire she took in which she self-reported her symptoms. (Tr. 778-79 (3/8/22), 899 (9/14/20), 1021-22 (7/31/19).)

[11] The ALJ did not err in considering mental status reports. First, as noted, *Arakas* and *Shelley* have not been extended to PTSD, and so those cases do not impact the ALJ's consideration of that impairment in this case. Second, in any event, *Shelley C.* does not bar the ALJ from considering subjective components of a mental status examination. *See, e.g., Shelby D. v. Kijakazi*, No. 3:22CV234, 2023 WL 6444895, at \*11 (S.D.W. Va. Sept. 29, 2023) (finding ALJ "properly noted that [the plaintiff]'s own *subjective* presentation in mental-status examinations was unremarkable") (emphasis in original). Consequently, the ALJ did not err in considering the subjective components of Plaintiff's mental status examinations. Last, even if the ALJ here impermissibly relied to some degree on Plaintiff's mental status reports as they relate to her depression or PTSD (which does not appear to be the case), there would still be no reason to remand here under *Shelley C.*, given the many other reasons the ALJ cited to in assessing Plaintiff's mental impairments (both PTSD and depression) as non-severe. *See Clifford E.*, 2024 WL 3105669, at \*9-10 (affirming ALJ's decision despite the holding in *Shelley C.* where "the ALJ here neither relied entirely on the absence of objective medical evidence to discount Plaintiff's [mental health] symptoms nor required that objective medical evidence substantiate those symptoms") (citations omitted) (cleaned up) (collecting cases); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest

24

Last, "*Shelley C.* and *Arakas* prevent ALJs from requiring claimants to provide medical evidence that would be impossible to produce given their specific medical conditions." *See Anthony P. v. O'Malley*, No. 1:22CV291 (DJN), 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024) ("[I]in assessing Plaintiff's subjective complaints, the ALJ considered Plaintiff's ability to complete a myriad of daily activities, Plaintiff's own statements about his condition, and Plaintiff's treating provider's observations of Plaintiff's functioning. Fourth Circuit precedent does not suggest that ALJs should ignore objective evidence such as this.") (internal citations omitted). Here, the ALJ weighed Plaintiff's subjective complaints appropriately under those holdings and did not impose undue demands prohibited by *Shelley*. *See id., see also Clifford E.*, 2024 WL 3105669, at *9-10 (collecting cases).[12]

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that the final

---

of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result").

[12] Plaintiff also contends that the ALJ failed to consider the "waxing and waning nature of [her] PTSD and depression[ ] with her isolating at home[.]" (Docket Entry 8 at 10.) This objection is unpersuasive. First, the ALJ's four-page single spaced analysis considers in detail the frequency of Plaintiff's symptoms, reasonably concluding for good reasons that they only "flare up infrequently." (Tr. 27.) Second, Plaintiff—whose activities of daily living (as described earlier) were substantial—also admits there is not "extensive" evidence of home isolation. (Docket Entry 8 at 10.) Third, Plaintiff's subsequent recitation of the evidence that she asserts demonstrates that her mental health impairments are severe (or that she must isolate at home) (*Id.* at 10-14) do not compel such a conclusion and amount to an impermissible request to reweigh the evidence. *See Craig*, 76 F.3d at 589.

decision of the Commissioner be upheld.

/s/ Joe L. Webster

United States Magistrate Judge

September 24, 2024
Durham, North Carolina